Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | John W. Darrah | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 96 C 4347 | **DATE** | 8/1/2001 |
| **CASE TITLE** | PERROTT vs. USA | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to] ☐ FRCP4(m) ☐ General Rule 21 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] Status hearing held. Plaintiff's routine motion for leave to file deposition transcripts pursuant to defendants' FRCP is granted. Enter Memorandum Opinion and Order. Defendant's motion for summary judgment is granted in part and denied in part.
(11) ☐ [For further detail see order (on reverse side of/attached to) the original minute order.]

| | | | Document Number |
|---|---|---|---|
| | No notices required, advised in open court. | | |
| | No notices required. | number of notices | |
| | Notices mailed by judge's staff. | AUG 0 2 2001 date docketed | 69 |
| | Notified counsel by telephone. | | |
| ✓ | Docketing to mail notices. | docketing deputy initials | |
| | Mail AO 450 form. | | |
| | Copy to judge/magistrate judge. | | |
| LG | courtroom deputy's initials | date mailed notice | |
| | | 01 AUG -1 PM 4:44 Date/time received in central Clerk's Office | mailing deputy initials |

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| PAMELA PERROTT and <br> JOSEPH PERROTT, <br><br> Plaintiffs, <br><br> v. <br><br> UNITED STATES OF AMERICA, <br><br> Defendant. | ) <br> ) <br> ) <br> ) <br> ) No. 96 C 4347 <br> ) <br> ) Judge John W. Darrah <br> ) <br> ) <br> ) |

## MEMORANDUM OPINION AND ORDER

DOCKETED
AUG 0 2 2001

    Plaintiffs, Pamela Perrott (Pamela) and Joseph Perrott, filed suit against defendant, the United States of America (United States), alleging negligence and loss of consortium stemming from alleged injuries Pamela received from a bulk-mail container of the United States Postal Service (Postal Service). Before this Court is defendant's Motion for Summary Judgment.

    Summary judgment is proper if " the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact." Fed. R. Civ. P. 56(c). All the evidence and the reasonable inferences that may be drawn from the evidence are viewed in the light most favorable to the nonmovant. *Miller v. American Family Mutual Ins. Co.*, 203 F.3d 997, 1003 (7th Cir. 2000). However, the nonmovant must still come forward with evidence establishing the elements of his or her claim on which he or she bears the burden of proof at trial. As such, the nonmovant must establish specific facts that show there is a genuine issue for trial. *Miller*, 203 F.3d at 1003.

    Pamela began working at O'Hare International Airport (O'Hare) in 1987 for United Airlines

(United) as a ramp service person. Duties of a ramp service person include loading and unloading luggage, mail, and freight from aircraft. (Def.'s 56.1(a)(3) Statement ¶ 1). Pamela received training from United on how to properly unload and load a plane, drive tugs (motorized vehicles pulling containers), hook up containers, carry items, and how to safely use United's transport equipment and containers. (Id., at ¶ 2). When Pamela began working for United, she received a training booklet from the union that discussed operating procedures and safety issues. In addition, United required Pamela take a safety test every year. (Id., at ¶ 3).

During this same time period, United contracted with the Postal Service to transport mail to various cities. Pamela was sometimes dispatched to the Postal Service's Air Mail Center to load mail from the chutes into United LD3 containers or to unload postal Bulk Mail Containers (BMC) into United LD3 containers. While at the Air Mail Center, Pamela worked under the direction of United employees. (Def.'s 56.1(a)(3) Statement ¶ 4). United's LD3s are large box-like metal containers set on a dolly. LD3's are loaded into cargo holds of airplanes. (Id., at ¶ 5).

A Postal Service BMC is a rectangular, box-like aluminum container on wheels. (Def.'s 56.1(a)(3) Statement ¶ 6). It has a hand-brake that can be set or released as needed. (Id., at ¶ 7). It has two doors by which it may be opened. One door covers the entire length and width of the container. This door is hinged at the top and opens out and upward from the bottom. Two spring-loaded cylinders assist in raising the door to a point below 90 degrees. Thereafter, the door must be manually raised so that the notched hole in the cylinders line-up for the insertion of a safety pin that is attached by a cable to the side of the container. The safety pin assures the door will not fall down. (Id., at ¶ 6). The other door of the BMC is located on the opposite side of the other door. This door is a "half door" that covers the top half of the container. This door is hinged horizontally in the

middle of the container. The top half of the door folds out and down, flush with the bottom half of the container. (Id., at ¶ 7).

Pamela and other United ramp service persons were not formally trained in the use of the Postal Service BMC's but would watch co-workers and learn by observation. Pamela customarily used the full door with the safety pin but occasionally used the half door. United personnel were aware that, even with the brake set, nudging a BMC could result in the BMC moving. (Def.'s 56.1(a)(3) ¶ 8).

At the Freight Facility, Postal Service trucks delivered MBC's onto a dock "staging area". A United ramp service person would roll the BMC from the dock door to an empty LD3 conatiner, set the brake, and unload the BMC's contents into the LD3. It took at least one to two hours to unload the BMC's from the truck and to transfer their contents to LD3's. After unloading, the empty BMC was closed and returned to the staging area. Loaded LD3's are taken to the aircraft. (Def.'s 56.1(a)(3) Statement ¶ 9).

United had a red tag system by which damaged or defective LD3's could be taken out of service. As a policy, United would not allow or require employees to use unsafe equipment. United and the Postal Service had an agreement that damaged Postal Service equipment was to be returned to the Postal Service. Damaged BMC's found by Postal service employees at the Air Mail Center were also red-tagged with Postal Service tags and taken out of service. (Def.'s 56.1(a)(3) Statement ¶ 10).

On October 26, 1993, Pamela began her shift at the Freight Facility at 10:00 p.m. and was sent to the Air Mail Center. Pamela returned from the Air Mail Center between midnight and 1:00 a.m. (Def.s' 56.1(a)(3) ¶ 11). At some point, she was unloading full BMC's into empty LD3's at

3

the Freight facility. During this time, she took a loaded BMC from the staging area to an empty LD3. The BMC held flats, open cardboard trays holding letters or closed boxes, which take longer to unload than bags of mail. (Id., at ¶ 12). Pamela set the BMC brake and released the door. She lifted the door to the point where the safety is inserted and for the first time looked for the safety pin on the side of the container. She discovered that the BMC did not have a safety pin and propped up the door on top of the LD3 with the units parallel to each other. Pamela then started unloading the contents of the BMC into the LD3, working between the two containers and beneath the BMC door. Pamela had observed co-workers and supervisors prop the BMC door onto a LD3 to keep the BMC door open when a safety pin was missing. While this was the practice when a safety pin was missing, it was not authorized by United. Pamela recalls speaking with co-workers about missing safety pins but does not recall discussing missing safety pins with her "lead". She did not speak to anyone about the missing pin on this specific occasion. (Id., at ¶¶ 13-14).

While Pamela was unloading the BMC, Andy Smith (Smith) told Pamela that he had to move her BMC. Before Pamela could respond, Smith pushed the BMC, causing the BMC door to slide off the LD3 and fall on top of Pamela's head. (Def.'s 56.1(a)(3) Statement ¶ 15). Pamela was taken to Resurrection Hospital where she was examined and released. She drove herself home and subsequently went to her own physician. (Id., at ¶ 17).

After the accident, United tagged the BMC as being damaged and returned it with all the other empty BMC's to the Postal Service. United did not inform the Postal Service that this particular BMC had been involved in an accident or request that the BMC be kept for investigation. (Def.'s 56/1(a)(3) Statement ¶ 18).

United is one of several airlines that the Postal Service has contracted with to transport mail.

4

To ensure contract compliance, carriers and the Postal Service have monthly meetings to discuss any issues that may have arisen. (Def.s' 56.1(a)(3) Statement ¶ 19). Although BMC's were discussed between 1990 and 1996 at monthly meetings, no carrier raised an issue relating to damaged BMC's. No carrier called the Postal Service Transportation manager between 1992 and 1995 to report a problem with damaged equipment. (Id., at ¶ 20). In the years surrounding the accident, no United employee told the Cargo Service Supervisor for United that BMC's were being delivered without safety pins. No leads or team leaders ever reported to the Cargo Service Supervisor that safety pins were missing on Postal Service BMC's. The ramp operations supervisor never heard any complaints about defective BMC's. (Id., at ¶ 21). Lavern Butler (Butler), a maintenance supervisor, testified at her deposition that beginning in 1986, she had heard that BMC's were sometimes unloaded without a safety pin and that coins were used to keep the BMC door open. (Butler's Dep. pp59-60). Between 1986 and 1993, approximately 5% of the BMC's received at the Chicago Bulk Mail Center Repair Facility were missing safety pins. (Id., at p. 90).

Plaintiff's complaint contains, in part, one count identified as a negligence claim. Within that count, plaintiff alleges several acts by defendant that constitute negligence, *i.e.*, "negligently failed to properly and adequately design, inspect, maintain and repair". The complaint does not separately identify different theories of negligence, *i.e.*, negligent design, negligent repair. In its motion for summary judgment, defendant addressed the complaint as alleging negligence in the condition of the BMC (defective condition). In response to defendant's motion, plaintiff argues that defendant failed to recognize that the cause of action is based on negligent design and failure to redesign and/or repair defective postal equipment. Both parties addressed the alleged defective pin attachment but did not address allegations concerning the alleged defective braking system. Therefore, based on a review

5

of the motion, briefs, and complaint, it is apparent that defendant is seeking partial summary judgment, and the Court, therefore, has addressed the claims for which defendant argues summary judgment is proper.

Suits brought under the FTCA are governed by the law of the state in which the negligent act or omission allegedly occurred. 28 U.S.C. § 1346(b); *Midwest Knitting Mills v. United States*, 950 F.2d 1295, 1297 (7th Cir. 1991). Accordingly, the parties agree that Illinois law is applied to the present case.

The United States, as a public entity, is protected by the provisions of the Illinois Local Government Tort Immunity Act, 745 ILCS 10/3-102(a). *Rose v. United States*, 929 F.Supp. 305, 307 (N.D.Ill. 1996). This provision applies to the instant case, as well as premise liability case, because the provision applies to both real and personal property that is owned or leased by a local entity. 745 ILCS 10/3-101. Therefore, plaintiff must prove that she was owed a duty of care by defendant, that a breach of this duty proximately caused her injuries, and that the United States had actual or constructive notice of the allegedly unsafe condition in time to correct it. *Stewart v. United States*, 918 F.Supp. 224, 226 (N.D.Ill. 1996) (*Stewart*). Constructive notice is established if the condition has existed for a length of time, or was so conspicuous, that authorities exercising reasonable care and diligence might have known about the condition. *Stewart*, 918 F.Supp. at 227.

I. Negligent Repair

Defendant argues that plaintiff's negligence claims fail because the United States did not have actual or constructive notice that the pin was missing from the BMC and it that did not have time to correct such problem.

Plaintiff has established that some of defendant's employees knew that the pins sometimes

6

became detached from BMC's and that employees sometimes used coins to keep the BMC door open. However, plaintiff has not shown that defendant had either actual or constructive notice that the BMC that allegedly caused plaintiff's injuries did not have a pin attached or that there was time to correct the problem. Plaintiff, herself, was not aware that the pin was missing until she attempted to find the pin to keep the BMC door open. Plaintiff has provided no evidence that any employee of defendant was aware of the missing pin on the BMC used by plaintiff. Therefore, plaintiff is unable to establish a *prima facie* case against the United States for negligent repair because defendant did not have notice the BMC needed repair. *See Franke v. United States*, 2000 WL 1263657 (N.D. Ill. Sept. 1, 2000) (granting summary judgment because plaintiff failed to show that defendant's notice of prior accidents of an unsafe condition notified defendant of an unsafe condition of the particular mat over which plaintiff allegedly fell); *Davis v. United States*, 2000 WL 28272 (N.D.Ill. Jan. 6, 2000) (granting summary judgment because plaintiff could show actual or constructive notice on the part of defendant of the worn rug that allegedly caused plaintiff's fall); *Stewart*, 918 F.Supp. at 227.

II. Negligent Inspection and Maintenance

The factors relevant to a court's imposition of a duty include: (1) the likelihood of injury, (2) the reasonable foreseeability of such injury, (3) the magnitude of guarding against the injury, and (4) the consequences of placing that burden on defendant.

Defendant argues that plaintiff's accident was not foreseeable. However, the above facts support that defendant knew that the pins from BMC's sometimes became detached from the BMC, that employees used other means to hold the BMC door open, and that the pin was used with the BMC to insure the proper and safe use of the BMC. Accordingly, an injury caused by a BMC falling

7

down because an alternate method of keeping the door open because the pin was missing was foreseeable to defendant.

Defendant also argues plaintiff cannot establish proximate causation.

Proximate cause is ordinarily a question for the jury to decide. The question of proximate cause only becomes a question of law when the facts are not only undisputed but are such that there can be no difference in judgment of reasonable men as to the inferences drawn from the undisputed facts. *Mack v. Ford Motor Co.*, 283 Ill. App. 3d 52, 57 (1996) (*Mack*).

More than one proximate cause may exist, and a defendant may be liable even if his or her negligence is not the sole proximate cause of the plaintiff's injuries, so long as his or her conduct contributed in whole or in part to the injury. *Mack*, 283 Ill. App. 3d at 57. A defendant's negligence does not constitute proximate cause of a plaintiff's injuries if some intervening act supersedes the defendant's negligence. However, if the defendant could reasonably foresee the intervening act, that act will not relieve the defendant of liability. *Mack*, 283 Ill. App. 3d at 57. Furthermore, the precise nature of the intervening cause need not be foreseen; and, if varying inferences are possible, foreseeability is a question for the jury. *Mack*, 283 Ill. App. 3d at 57.

In light of the foregoing principles, plaintiff has demonstrated questions of material fact whether defendant's alleged negligence was the proximate cause of plaintiff's alleged injuries. The facts establish that intervening acts did occur in this case, for example, another employee moving the BMC while plaintiff was working near it. However, the facts demonstrate that the intervening acts may have been foreseeable to defendant. Defendant was aware that pins became detached from the BMC's and that the BMC's were used without such pins and that such use was unsafe.

Furthermore, plaintiff has demonstrated that questions of material fact exist whether

defendant had constructive notice that the BMC should have been inspected and/or maintained in a manner to prevent the pin from detaching from the BMC and/or identifying BMC's that did not have a pin attached. Some of defendant's employees knew that pins became detached from BMC's for multiple years, and they also knew that employees used other means, for example, coins, to keep the BMC door open. Accordingly, summary judgment cannot be granted on plaintiff's negligent inspection and maintenance claims.

### III. Negligent Design

A manufacturer of a product owes a duty to design a product so that it is reasonably safe for its intended use and any foreseeable use. *Sanchez v. Bock Laundry Mach. Co.*, 107 Ill. App. 3d 1024, 1028 (1982). In order to recover on a design negligence theory, a plaintiff must establish that 'the quality of a particular product is insufficient and that the duty of care on the part of the manufacturer required it to design something safer for the user.' *Mason v. Ashland Exploration, Inc.*, 965 F.2d 1421, 1427 (7th Cir. 1992) (*Mason*), quoting *Kokoyachuk v. Aeroquip Corp.*, 172 Ill. App. 3d 432 (1988). A manufacturer satisfies this duty of care when it "has endeavored to construct a product to function properly for the purpose for which it is designed and its operation creates no danger that it is not known to the user." *Flaugher v. Sears, Roebuck & Co.*, 61 Ill. App. 3d 671, 675-76 (Ill. 1978) (*Flaugher*). "[A] manufacturer is under no duty to make a [product] foolproof against all possible accidents." *Flaugher*, 61. Ill. App. 3d at 676.

Here, the BMC was designed with a pin to hold the large BMC door open, and the pin was attached to the BMC by a steel wire. The pin was required for the BMC to function properly, and plaintiff knew that a pin was to be used to hold the door open. The purpose of the steel wire was to make the pin immediately available to hold the door open and safely use the BMC. Based on these

9

undisputed facts, the pin attachment was designed for the purpose for which it was designed and its operation did not create a danger that was unknown to the user. Plaintiff knew that a pin was required to properly use the BMC and that the pin was missing, but she proceeded to use the BMC in a manner that she knew was dangerous. Pursuant to Illinois law, plaintiff's negligent design claim fails because defendant satisfied its duty of care. *See Mason*, 965 F.2d at 1427; *Flaugher*, 61 Ill. App. 3d at 676.

Defendant also argues that summary judgment should be granted for Joseph Perrott's loss of consortium claim because the claim is a derivative of Pamela Perrott's claim. Some of Pamela Perrott's claims remain; therefore, summary judgment on the derivative claim is not granted.

For the foregoing reasons, defendant's Motion for Summary Judgment is granted in part and denied in part. Summary judgment of plaintiff's negligent repair and negligent design claims as to the BMC's safety pin system is granted. Summary judgment is denied as to plaintiffs' negligent inspection and maintenance claims and the loss of consortium claim.

Dated: August 1, 2001

JOHN W. DARRAH
United States District Judge